## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION


PAMELA STRATFORD, et al.,

        Plaintiffs                     Case No. 2:07-CV-639

        v                             Judge Graham

SMITHKLINE BEECHAM CORP., et al       Magistrate Judge Kemp

        Defendants.


### Memorandum Opinion and Order


This matter is before the Court on Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline's ( hereinafter "GSK" or "Defendant" ) motion for partial dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)[1].  Plaintiffs are Pamela D. Stratford, individually and as personal representative of the estate of Madison A. Stratford, and Thomas C. Stratford, individually (collectively "Plaintiffs" or "Stratfords"). Plaintiffs assert claims for wrongful death and a survivorship claim, alleging that GSK was negligent in failing to act as a reasonably prudent drug manufacturer in the researching and promoting of the antidepressant Paxil (Count I); that GSK was negligent in that it breached its duty of ongoing pharmaco-vigilance (Count II); that GSK failed to warn of the harm associated with taking Paxil while pregnant (Count III); that GSK breached an express warranty that Paxil was safe and effective for use in pregnant women (Count IV); that GSK

---

[1]     The other defendants named in the Plaintiffs' complaint were voluntarily dismissed without prejudice on December 27, 2007.

breached implied warranties of merchantibility and fitness for a particular purpose (Count V); and that GSK committed fraud (Count VI).

On January 22, 2008,  Defendant filed its motion to dismiss Counts I, II, IV, V, VI, and VII for failure to state a claim under  Fed. R. Civ. P. 12(b)(6).  Plaintiffs filed their response on March 7, 2008. On March 21, 2008, Defendant filed its reply memorandum in support of the motion for partial dismissal.  As set forth below, the Court grants in part and denies in part the Defendant's Partial Motion for dismissal. Counts I (negligence), II (negligent pharmaco-vigilance), IV (breach of express warranty) and VI (fraud) are dismissed without prejudice. Count V (breach of implied warranty) is dismissed with prejudice for failure to state a claim upon which relief can be granted. Counts III and VII are not dismissed.

## I.    FACTUAL BACKGROUND

Plaintiff Pamela Stratford is the mother of Madison Stratford, deceased, and the personal representative of the estate of Madison Stratford.  Plaintiff Thomas Stratford is the father of Madison Stratford. The Plaintiffs are residents of the State of Ohio.  Madison Stratford was born in Cleveland, Ohio on July 6, 2003 and died on July 22, 2003.

GSK is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. At all times relevant herein, GSK was a pharmaceutical company involved in research, development, testing, manufacturing, production, promotion, distribution, and marketing of pharmaceuticals for distribution, sale and use by the general public, including the antidepressant drug Paxil (generic name: paraoxetine)(hereinafter referred to as "Paxil").  Paxil is a member of a class of drugs called "selective serotonin reuptake inhibitors" or "SSRIs."  The FDA approved Paxil for use in 1992, but has never approved Paxil for use in pregnant women.

Throughout her pregnancy with Madison, Pamela Stratford was prescribed and took the antidepressant Paxil. Plaintiffs allege that during the time that Mrs. Stratford took Paxil, GSK "aggressively and actively promoted Paxil for use with pregnant women" (Complaint at ¶ 15) and touted Paxil as a "safer alternative to other antidepressants for pregnant women." (Id). On July 6, 2003, Madison Stratford was born with a congenital heart defect called Hypoplastic Left Heart Syndrome (HLHS).  HLHS is a condition where the left side of the heart – including the aorta, aortic valve, left ventricle, and mitral valve – are underdeveloped.  Madison underwent three separate heart surgeries to try to correct his heart defect but none were successful and he died on July 22, 2003, sixteen days after his birth.

In September of 2005, GSK revised Paxil's label to include the following precaution:

Pregnancy:     Teratogenic Effects: Pregnancy Category C.

There are no adequate and well controlled studies in pregnant women. A recent retrospective epidemiological study of 3,581 pregnant women exposed to paroxetine or other antidepressants during the 1st trimester suggested an increased risk of overall major congenital malformations for paroxetine compared to other antidepressants (OR 2.20; 95% confidence interval 1.34-3.63). There was also an increased risk for cardiovascular malformations for paroxetine compared to other antidepressants (OR 2.08l 95% confidence interval 1.03-4.32); 10 out of 14 infants with cardiovascular malformations had ventricular septal defects. . .

(Complaint at ¶ 16).

On July 6, 2007,  Plaintiffs filed their complaint in this Court.  The Plaintiffs allege that GSK was aware of the risk to a fetus from exposure to Paxil prior to September 2005, but failed to warn potential users and physicians of the danger posed.  Plaintiffs further allege that GSK specifically marketed Paxil for use in pregnant women despite knowledge of the risk to the fetus and despite their duty as a drug company to warn users of any risks associated with ingestion of one of its drugs.  On the basis of these alleged facts,  Plaintiffs assert claims for negligence, negligent

pharmaco-vigilance, failure to warn, breach of express and implied warranties, and fraud.

GSK has filed a motion for dismissal of all Plaintiffs' common law causes of actions on the grounds that the Ohio Product Liability Act ("OPLA"), found at Ohio Rev. Code § 2307.71 *et seq*, governs the Plaintiffs' action, and that the Act specifically abrogates all common law claims.  GSK therefore seeks dismissal all of the counts in the Complaint except Count III, Failure to Warn.

## II.  <u>STANDARD OF REVIEW</u>

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. <u>Scheurer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Roth v. Steel Prods v. Sharon Steel Corp.</u>, 705 F.2d 134, 155 (6th Cir. 1982).  A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief. <u>Rauch v. Day & Night Mfg. Corp.</u>, 576 F.2d 697 (6th Cir. 1978).

Because a motion under Rule 12(b)(6) is directed solely at the complaint itself, the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. <u>Scheurer</u>, 416 U.S. at 236; <u>Roth Steel Prods.</u>, 705 F.2d at 155; <u>see</u> <u>also</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. ___, 127 S. Ct. 1955, 1965 (2007)(Rule 8 "does not impose a probability requirement at the pleading stage").  A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory.  <u>Weiner v. Klais & Co., Inc.</u> 108 F.3d 86, 88 (6th Cir. 1997). The court is not required to accept as true unwarranted legal conclusions or factual

inferences. Morgan v. Church's Fired Chicken, 829 F. 2d 10, 12 (6th Cir. 1987). Though the complaint need not contain detailed factual allegations, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Bell Atlantic Corp., 127 S.Ct. at 1964-65; Associated Gen. Contractors of Cal., Inc v. Carpenters, 459 U.S. 519, 526 (1983). Plaintiff must provide more than labels and conclusions, or a formulaic recitation of the elements of a cause of action, Bell Atlantic, 127 S.Ct. at 1965, and the court is not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III.   LEGAL ANALYSIS

This matter is before the Court on the basis of diversity jurisdiction. See 28 U.S.C. § 1332. Federal courts sitting in diversity must apply the choice-of-law rules of the forum state. Muncie Power Prods. v. United Techs. Auto., Inc., 328 F.3d 870, 873 (N.D. Ohio 2003). In Ohio, there is a presumption that the law of the place of injury controls. Id. at 874. However, this presumption may be overcome by evidence demonstrating that another state has a more significant relationship to the action. Id. In the instant case, Ohio has a more significant relationship to the action: the Plaintiffs are residents of Ohio, the injury to Madison and his death occurred in Ohio, Mrs. Stratford was prescribed Paxil in Ohio, and ingested Paxil while in Ohio. See Id. (factors to consider in determining choice of law include the place where the injury occurred, the place where the conduct causing the injury occurred, the domicil, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered). Thus, the Court applies Ohio law to the claims at hand.

The OPLA applies to "recovery of compensatory [or punitive] damages based on a product

5

liability claim." See Delahunt v. Cytodyne Techs, 241 F. Supp. 2d 827, 842 (S.D. Ohio 2003)(citing Ohio Rev. Code § 2307.72(A),(B)). Pursuant to Ohio Rev. Code § 2307.71(A)(13), a "product liability claim" is defined, in pertinent part, as:

> (13) "Product liability claim" means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:

>> (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;

>> (b) Any warning or instruction, or lack of warning or instruction, associated with that product;

>> (c) Any failure of that product to conform to any relevant representation or warranty.

The statute specifically applies to "ethical drugs," such as Paxil, which are "prescription drugs that are prescribed or dispensed by a physician or any other person who is legally authorized to prescribe or dispense a prescription drug." Ohio Rev. Code § 2307.71(A)(4).

Here, because Plaintiffs' complaint seeks damages from a manufacturer for death, physical injury and emotional distress, that allegedly arose from Mrs. Stratford's ingestion of an "ethical drug," Plaintiffs' claim is a "products liability claim" within the meaning of Ohio Rev. Code § 2307.71(A)(13). As a products liability claim, any recovery of compensatory damages is "subject to sections 2307.71 to 2307.79 of the Revised Code." See Ohio Rev. Code § 2307.72(A). Effective April 7, 2005, Ohio Rev. Code. § 2307.71 was amended to include the following:

> (B) Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability causes of action.

The amended version of the Code applies to actions that arose after the effective date of the

amendments. <u>Luthman v. Minster Supply Co.</u>, No. 2-06-43, 2008 Ohio 165 (Ohio Ct. App. Jan. 22,

2008) (applying the version of Ohio Rev. Code § 2307.71 *et seq* in effect at the time the cause of

action accrued); <u>Doty v. Fellhauer Elec., Inc.</u>, No. OT-07-023, 2008 Ohio 1294 (Ohio Ct. App. Mar.

21, 2008) (amended OPLA did not apply to abrogate negligent design claim accruing prior to

amendment's effective date).  In order to determine which version of the OPLA applies to this case,

the Court must first determine when the Plaintiffs' cause of action accrued.

The statute of limitations for a wrongful death action involving a products liability claim is

found at Ohio Rev. Code § 2125.02 (D)(2)(g), which provides in pertinent part:

> [T]he cause of action that is the basis of the action accrues upon the date on which the
> claimant is informed by competent medical authority that the decedent's death was related
> to the exposure to the product or upon the date on which by the exercise of reasonable
> diligence the claimant should have known that the decedent's death was related to the
> exposure to the product, whichever date occurs first. A civil action for wrongful death based
> on a cause of action described in division (D)(2)(g) of this section shall be commenced
> within two years after the cause of action accrues and shall not be commenced more than two
> years after the cause of action accrues.

Plaintiffs  have alleged in their complaint  that the earliest date on which they should have known

that Madison's injury and death was caused by exposure to Paxil was in September 2005, when

GSKs changed Paxil's warning label. Assuming, as the Court is required to do, that the allegations

in Plaintiffs' complaint are true, the cause of action accrued in September of 2005. <u>See</u> Ohio Rev.

Code § 2125.02(D)(2)(g).  As the cause of action accrued after the effective date (April 7, 2005) of

amended Ohio Rev. Code § 2307.71, the amended version of the statute applies to the case at hand.

Accordingly, all common law claims arising from damages in connection with product liability

claims are abrogated by the OPLA. <u>See</u> Ohio Rev. Code. § 2307.72(B) (in enacting the OPLA, the

legislature intended to "abrogate all common law product liability claims or causes of action").

A.      **Count I – Negligence**

In their negligence claim, Plaintiffs allege that GSK breached its duty to exercise reasonable care in the "advertising, marketing, promotion and labeling of Paxil to ensure that Paxil's use did not result in injury." Plaintiffs also allege that GSK was negligent in:

1)      "[R]esearching, manufacturing, selling, merchandising, advertising, promoting, labeling, analyzing, testing, distributing, and marketing Paxil." (Complaint at ¶ 25(a)).

2)       Failing to disclose "information in its possession regarding the association between Paxil and congenital heart defects."(Complaint at ¶ 25(b)).

3)      Failing to adequately warn about the dangers of using Paxil during pregnancy. (Complaint at ¶ 25(c)).

4)      Promoting Paxil as safe and effective for use in pregnant women. (Complaint at ¶ 25(d)).

5)      Failing to act as a reasonable drug manufacturer. (Complaint at ¶ 25(e)).

6)      Over-promoting Paxil "in a zealous and unreasonable way without regard to the potential danger that it poses for an unborn child." (Complaint at ¶ 25(f)).

Plaintiffs' claim for common law negligence is preempted by the OPLA. The actionable conduct that forms the basis of the negligence claim -- negligent research, manufacturing, testing, marketing, and failure to warn -- is the same conduct that the OPLA defines as giving rise to a "products liability claim." See Ohio Rev. Code. §2307.71(A)(13).  The case law firmly supports a conclusion that Plaintiffs' negligence claim is preempted.  See Tompkin v. American Brands, 219 F. 3d 566, 575 (6th Cir. 2000) (finding claim for negligence for the manner in which cigarettes were tested, researched, sold and promoted fell under the auspices of the OPLA); Delahunt v. Cytodyne Techs, 241 F. Supp. 2d 827, 843-44 (S.D. Ohio 2003) (finding the OPLA preempted the plaintiff's claim that the defendant was negligent for fraudulently marketing its product by misrepresenting its

8

dangerousness); Paugh v. R.J. Reynolds Tobacco Co., 834 F. Supp. 228, 230 (N.D. Ohio 1993) (allegations that there was negligence in how cigarettes were "tested, researched, sold, and promoted" fell under OPLA); Saraney v. TAP Pharm. Prods., No. 1:04 CV 02026, 2007 U.S. Dist. LEXIS 3113 (S.D. Ohio January 16, 2007) (negligence claim is preempted by the OPLA).

Although the negligence claim is abrogated by the OPLA, some of the Plaintiffs' claims may be authorized by the statute. Plaintiffs allege that GSK was negligent in promoting a drug that was not reasonably safe for pregnant women, knowing that there existed a serious risk to the developing fetus. Such an allegation may form the basis of a claim for defective design or formulation under Ohio Rev. Code § 2307.75 ("a product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation as determined pursuant to division (B) of this section exceeded the benefits associated with that design or formulation as determined pursuant to division (C) of this section"). Plaintiffs' allegation that GSK was negligent in failing to warn physicians and pregnant women about the risks of Paxil is essentially a failure to warn claim which has already been pleaded under Count III. [2]

Claims that are authorized by the OPLA should be pled with reference to the applicable provision of the OPLA. Delahunt, 241 F. Supp. 2d at 844 (in order to avoid confusion with respect to product liability claims, the complaint should clarify which section of the OPLA governs each of the plaintiff's claims) (citing White v. DePuy, Inc., 129 Ohio App. 3d 472, 478 n. 2, 718 N.E.2d 450, 454 n. 2 (requiring the parties to resubmit briefing when neither party had applied the OPLA to product liability claims); see also Saraney, 2007 U.S. Dist. LEXIS 3113 at *26 (complaint should

---

[2]     GSK has not moved to dismiss Count III, Failure to Warn. However, the Court notes that Count III was not pled pursuant to the OPLA. Plaintiffs should consider repleading this Count to clarify that it is being brought pursuant to Ohio Rev. Code § 2307.77.

set forth which sections of the OPLA apply to the plaintiff's claims).  The Plaintiffs' claim for negligence, as it may relate to claims for defective design under Ohio Rev. Code §2307.75,  is therefore dismissed without prejudice in order to plead the allegations  therein pursuant to the OPLA. Delahunt, 241 F. Supp. 2d at 844 (dismissing count of complaint without prejudice to be replead pursuant to OPLA).

### 2)      Count II – Negligent Pharmaco-Vigilance

"Negligent pharmaco-vigilance" apparently refers to the on-going duty to continually monitor, test and analyze data regarding the safety, efficacy and prescribing practices of a pharmaceutical company. White v. Smithkline Beecham Corp., 538 F. Supp. 2d 1023, 1026 (W.D. Mich.2008) (referring to a claim of negligent pharmaco-vigilance).[3]  Plaintiffs assert that GSK breached its ongoing duty to monitor safety data and testing on its pharmaceutical products. Plaintiffs also claim that  GSK breached its duty to inform physicians, regulatory agencies, and the public of the risk of the using Paxil during pregnancy which came to, or should have come to, GSK's attention.  All product liability claims are "subject to sections 2307.71 to 2307.79 of the Revised Code." See Ohio Rev. Code § 2307.72(A).

A manufacturer, such as GSK, is subject to liability on a product liability claim if the product "was defective in manufacture or construction as described in 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code, or was defective because it did not conform to a representation made by its manufacturer as

---

[3]      The Court could not find any Ohio case discussing a claim of "negligent pharmaco-vigilance."

described in section 2307.77 of the Revised Code." <u>See</u> Ohio Rev. Code. § 2307.73(A)(1),(2),(3). Plaintiffs' claim for breach of the duty to continually test a product and to inform physicians, regulatory agencies, and the public about new information may be authorized by the OPLA. Ohio Rev. Code. § 2307.76(A)(2)(a),(b) authorizes a claim for inadequate post-market warning or instruction. <u>See</u> R.C. 2307.76(A)(2)(a),(b) (a product is defective due to inadequate post-marketing warning or instruction if after the product left the manufacturer's control, the manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages and failed to provide post-marketing warnings or instructions). As the claim may be authorized by this section of the OPLA, Plaintiff should plead it accordingly. Plaintiffs' complaint for negligent pharmaco-vigilance is therefore dismissed without prejudice so that Plaintiff can clarify the statutory authority under which the claim is brought. <u>Delahunt</u>, 241 F. Supp. 2d at 844 (in order to avoid confusion with respect to product liability claims, the complaint should clarify which section of the OPLA governs each of the plaintiff's claims) (citing <u>White</u>, 129 Ohio App. 3d at 478 n. 2, 718 N.E.2d at 454 n. 2 (requiring the parties to resubmit briefing when neither party had applied the OPLA to product liability claims).

### C.     Count IV– Breach of Express Warranty

Count Four of the Plaintiffs' complaint is for breach of express warranty. Plaintiffs assert that GSK "expressly warranted to all foreseeable users of [Paxil], including Ms. Stratford, that Paxil was safe and effective for the treatment of women during pregnancy and without significant risk to the fetus." (Complaint at ¶ 49). Plaintiffs further assert that Ms. Stratford relied on these express

representations to her detriment because Paxil was, in fact, not safe for women to use during pregnancy.

Plaintiffs' claim for breach of express warranty is a common law products liability claim that is abrogated by the OPLA.  White v. DePuy, Inc., 129 Ohio App. 3d 472, 718 N.E.2d  450, 459 (Ohio Ct. App. 1998) (finding that OPLA codified claims for breach of express warranty). The allegations for breach of express warranty are, however, authorized by Ohio Rev. Code § 2307.77:

> A product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation.

Because the claim is authorized by the OPLA, GSK's motion to dismiss is granted without prejudice to the Plaintiffs refiling the claim in accordance with the statute. Delahunt, 241 F. Supp. 2d at 844 (dismissing count of complaint without prejudice to be replead pursuant to the OPLA).

### D.    Count V – Breach of Implied Warranty

Count V of Plaintiffs' complaint is for breach of implied warranty.  Plaintiffs assert that GSK impliedly warranted that Paxil was  "[s]afe and effective for the purpose for which it had been placed in the stream of commerce by GSK, including the treatment of pregnant women, and that Paxil was reasonably safe, proper, merchantable and fit for the intended purpose, including the treatment of pregnant women and without significant risk to the fetus." (Complaint at ¶ 57).  The "OPLA has preempted the implied warranty of merchantability and the implied warranty of fitness for a particular purpose." Luthman v. Minster Supply Co., No. 2-06-43, 2008 Ohio 165 (Ohio Ct. App. Jan. 22, 2008); see also Chamberlain v. Am. Tobacco Co., No. 1-96 CV 2005, 1999 U.S. Dist. LEXIS 22636 (N.D. Ohio Nov. 19, 1999);  Jones v. American Tobacco Co., 17 F. Supp. 2d 706, 721, (N.D. Ohio, 1998) (a claim for breach of implied warranty has been merged with the claim for

12

strict liability in tort, and is thus governed by the Ohio Product Liability Act). Moreover, the implied warranty claim does not fall into any of the statutorily authorized product liability claims found in the OPLA.

As stated supra, the OPLA sets forth those products liability claims which may be made against a manufacturer (Ohio Rev. Code § 2307.73) and none of the statutorily recognized claims includes an implied warranty claim. Ohio Rev. Code § 2307.74 describes a statutory cause of action for a product that is "defective in manufacture and construction" which has common elements with the common law implied warranty/strict tort liability cause of action. White, 129 Ohio App. 3d at 480, 718 N.E.2d at 456. However, the statutory provision requires that the plaintiff show that the product "deviated in a material way from the design specifications, formula, or performance standards of the manufacturer." Ohio Rev. Code § 2307.74. Plaintiffs' claim for breach of implied warranty does not contain any allegation that Paxil deviated from any design specifications, formula or performance standards. Plaintiff fails to state a claim for either implied warranty or a violation of Ohio Rev. Code § 2307.74. Accordingly, Plaintiffs' claim for breach of implied warranty is dismissed with prejudice.

### E. Count VI – Fraud

Plaintiffs' sixth count is for common law fraud. The elements of common law fraud are: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. Russ v. TRW, Inc., 59

Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083-84 (Ohio 1991).

Fed. R. Civ. P. 9(b) provides in pertinent part that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Sixth Circuit has read Rule 9(b) to require the plaintiff, at a minimum to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of defendant; and the injury resulting from the fraud." Yuhasz v. Brush Wellman, Inc.,181 F. Supp. 2d 785, 788 (N.D. Ohio 2001) (citing Coffey v. Foamex L.P., 2 F. 3d 157 (6th Cir. 1993)).

Plaintiffs allege that GSK engaged in fraud by both failing to disclose material facts and actively misrepresenting information about Paxil's safety. The Plaintiffs' allegations of fraudulent omission are essentially allegations that GSK failed to properly warn physicians and consumers of the risk associated with taking Paxil during pregnancy. Although the allegations of fraud involving omissions on the part of GSK are sufficiently pled under Rule 9(b), they are preempted by the Ohio Rev. Code § 2307.77 governing the failure to warn.

 The complaint also generally alleges that GSK actively misrepresented the truth about Paxil's safety.  The claims of active misrepresentation are not necessarily abrogated by the OPLA because they may implicate the more general duty not to deceive, rather than the duty to warn. Glassner v. R. J. Reynolds Tobacco Co., 223 F.3d 343 (6th Cir. 2000) (fraud claims are based on the general duty not to deceive); see Chamberlain,1999 U.S. Dist. LEXIS 2263 (complaint for fraud that was grounded on allegations of breach of a general common law duty not to deceive rather than on allegations that the product did not conform to defendant's representations or warranties is not displaced by the OPLA); Hollar  v. Philip Morris Inc., 43 F. Supp. 2d 794, 808 (N.D. Ohio 1998) (common law fraud claim is based primarily on defendant's breach of its  alleged duty not to deceive

14

and is not limited to a product liability claim).

However, the allegations of fraud by active deception are not sufficeintly pled under Rule 9(b). The Complaint does not state the time, place and context of the alleged misrepresentations. The allegations of misrepresentation are general and vague. See Coffey, 2 F.3d at162 (general allegations of deceit, without more, do not give rise to a properly pled claim for fraud).

The failure to properly plead fraud is not, however, grounds for dismissal of this count with prejudice. See Hayduk v. Lanna, 775 F.2d 441, 445 (1st Cir. 1958)(in meeting Rule 9(b) particularity requirement, "federal courts must be  liberal in allowing parties to amend their complaints"); Morse v. McWhorter, 290 F.3d 795, 800 (6th Cir. 2002) (leave to amend is particularly appropriate where the complaint does not allege fraud with particularity); United States ex rel. Bledsoe v. Cmty. Health Sys., 342 F.3d 634, 644 (6th Cir. 2003) (where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice). Accordingly, Plaintiffs' claim for fraud is dismissed without prejudice to allow Plaintiffs to specifically plead fraud arising from GSK's alleged misrepresentations.

### F.      Count VII – Survivorship

Ohio Rev. Code § 2305.21 provides:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto.

A claim for survivorship differs from a wrongful death claim in that a survivorship claim is one for the "wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through

his death." <u>Johnson v. Health Care & Retirement Corp.</u>, No. L-92-281, 1993 Ohio App. LEXIS

1990 (Ohio Ct. App. April 9, 1993) (citing <u>May Coal Co. v. Robinette</u>, 120 Ohio St. 110, 165 N.E.

576 (1929)). Damages in a survival action are awarded to compensate for the decedent's pain and

suffering and expenses while he was alive. <u>Perry v. Eagle-Picher Industries, Inc.</u>, 52 Ohio St. 3d 168,

566 N.E. 2d 484 (1990).

Survivorship is a claim that is derivative of the principal claims in a complaint. <u>Glassner v.</u>

<u>R.J. Reynolds Tobacco Co.</u>, No. 5:99 CV 0796, 1999 U.S. Dist. LEXIS 22637 (N.D. Ohio June 29,

1999). Thus, the Plaintiffs' claim for survivorship is for damages associated with the pain and

suffering incurred by Madison Stratford, while he was alive, as a result of GSK's actions as alleged

in Plaintiffs' other counts. The claim for survivorship in the complaint remains so long as any of the

underlying principal claims in the complaint remain. <u>Id</u>.  As the Court is not dismissing all of the

other claims with prejudice, the survivorship claim is also not dismissed.

## IV.  <u>CONCLUSION</u>

Based on the foregoing analysis, GSK's partial motion to dismiss (doc. 16) is granted in part

and denied in part. Counts I, II, IV, and VI are dismissed without prejudice and Count V is

dismissed with prejudice.  Counts III and VII are not dismissed.  The Plaintiffs are granted leave to

amend their Complaint in accordance with this Order.

It is so ORDERED.

<div style="margin-left: 40%;">

s/ James L. Graham

JAMES L. GRAHAM
United States District Judge

</div>

Date: June 17, 2008